# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRENDA L. SNYDER,** | **CASE NO. 4:16-cv-00261-MWB-GBC (JUDGE BRANN)** |
| **Plaintiff,** | **MAGISTRATE JUDGE COHN** |
| **v.** | **REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL** |
| **CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | **Docs. 1, 7, 8, 9, 10** |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq*., 416 *et seq.* (the "Regulations").

An administrative law judge ("ALJ") found that Plaintiff could perform the full range of light work. Doc. 8. Plaintiff has past relevant work at the light exertional level as a cabinet assembler. Doc. 8. Plaintiff was sixty-three years old on the date of the ALJ decision, so if she was unable to perform past relevant work, she would be disabled pursuant to the medical-vocational grids. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2

("Grids"). The Court limits discussion to Plaintiff's musculoskeletal impairments, the basis of Plaintiff's appeal. *See* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs").

Plaintiff established severe impairments of degenerative disc disease of the spine and degenerative joint disease of the right knee. (Tr. 15). Plaintiff testified that these impairments would preclude her from performing her past relevant work ("PRW") as a cabinet assembler because she was no longer able to stand for up to six hours a day or lift more than five pounds. Doc. 8. Neither the ALJ nor Plaintiff questioned the VE regarding whether PRW could be performed with a limitation to lifting more than five pounds, and Plaintiff provides no good cause for this omission, so Plaintiff waived the challenge to lifting limitations. Doc. 8.

Even if she had not waived the issue, the ALJ properly found that Plaintiff's testimony was not fully credible because she stopped working when the plant closed, not due to her disability, with no subsequent deterioration indicating that she could not return to her past work, physical examinations indicated few objective findings, X-rays indicated only "mild" degenerative changes, Plaintiff denied having any back pain or joint pain whatsoever in the majority of the treatment records, and she underwent conservative treatment with her primary care provider, with no physical therapy, specialist treatment, pain medications, or other care, although Plaintiff saw specialists and took prescription medication for other impairments. *See* Social Security Ruling ("SSR")

96-7p.[1] The ALJ may have erred in relying on other rationales for finding Plaintiff less than fully credible, but errors in assessing credibility are harmless if the other rationales provide substantial evidence. *Brumbaugh v. Colvin*, 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014) ("whether the error is harmless depends on whether the other reasons cited by the ALJ…provide substantial evidence for her decision").

The ALJ also relied on a medical opinion from a consulting examiner that Plaintiff could lift up to twenty pounds. Doc. 8. The ALJ rejected other aspects of this opinion, specifically that Plaintiff would be unable to stand for more than three hours per day or that she was limited in her ability to be exposed to fumes. Doc. 8. Plaintiff does not address fume exposure on this appeal. *See* Local Rule 84.40.4(b). Consequently, the only relevant omitted limitation from this opinion is the limitation to standing no more than three hours per day.

The ALJ properly found that Plaintiff was not limited to standing no more than three hours per day. The consultative examiner is not entitled to the deference of the treating source rule. *See Brown v. Colvin*, No. 415CV00992MWBGBC, 2016 WL 6661183, at *16 (M.D. Pa. Aug. 25, 2016), *report and recommendation adopted*, No. 415CV00992MWBGBC, 2016 WL 6652360 (M.D. Pa. Nov. 10, 2016) (Since Regulations were enacted in 1991, ALJ may reject non-treating opinions without contrary medical opinion evidence). "The ALJ properly found that the opinion was not supported

---

[1] SSR 96-7p was superseded by SSR 16-3p effective March 28, 2016, after the date of the ALJ decision in this case. *See* SSR 16-3p.

by objective findings on examination. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003) (*Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). The ALJ also properly found that the opinion was contradicted by Plaintiff's conservative care, generally consisting of over-the-counter pain medications and chiropractic adjustments. Doc. 8.

The substantial evidence standard requires the Court to uphold the ALJ's decision if any reasonable person would have relied on the relevant evidence to deny Plaintiff benefits. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The ALJ decision only lacks substantial evidence if the Court would direct a verdict in Plaintiff's favor. *Id.* The Court would not direct a verdict for the ALJ to adopt Dr. McLaughlin's opinion or for the ALJ to conclude that Plaintiff was credible. *Id.* Plaintiff bears the burden of demonstrating that she can no longer perform the standing requirements of her PRW. 42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i) (Plaintiff bears the burden of "furnish[ing] such medical and other evidence of" disability). The ALJ reasonably discounted the evidence Plaintiff produced in support of her disability. The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II. Procedural Background

On September 5, 2012, Plaintiff applied for DIB. (Tr. 13). On December 18, 2012, the Bureau of Disability Determination denied this application, (Tr. 55-65) and Plaintiff requested a hearing. (Tr. 76-77). On June 11, 2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 28-54). On September 15, 2014, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 10-27). Plaintiff requested review with the Appeals Council, which the Appeals Council denied on December 18, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On February 12, 2016, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On April 13, 2016, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 7, 8). On May 24, 2016, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 9). On June 24, 2016, Defendant filed a brief in response ("Def. Brief"). (Doc. 10). On November 11, 2016, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

## III. Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability

benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for

disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1)

whether the claimant is engaged in substantial gainful activity; (2) whether the claimant

has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the

claimant's impairment prevents the claimant from doing past relevant work; and (5)

whether the claimant's impairment prevents the claimant from doing any other work. *See*

20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine

Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears

the burden of proof at steps one through four. If the claimant satisfies this burden, then

the Commissioner must show at step five that jobs exist in the national economy that the

claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The

ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV. Facts

### A. Age, Education, and Vocational History

The Regulations classify Plaintiff, born in 1953, as a person closely approaching retirement age during the relevant period. (Tr. 17); 20 C.F.R. § 404.1563. Plaintiff has a limited education and past relevant work as a cabinet assembler. (Tr. 22, 63). The administrative transcript ("Tr.") is 652 pages long. (Doc. 8).

### A. Evidence Prior to Alleged Onset

Plaintiff treated from 2008 through March of 2011 with a chiropractor for back pain. (Tr. 411-25). Plaintiff stopped working as a repairer and painter for a cabinet manufacturer in June 2011 when the plant she was working in closed. (Tr. 190). Plaintiff collected unemployment through early 2013. (Tr. 35, 123, 133).

Plaintiff denied having any muscle or joint pain on September 10, 2010; January 27, 2011; and April 28, 2011. (Tr. 304, 307, 310). She reported back pain on July 25, 2011. (Tr. 225). She denied having any muscle or joint pain on December 2, 2011, and April 2, 2012. (Tr. 228, 232). Back pain is not listed as a diagnosis or part of her active problems in any of these records. *Id.* Osteoarthritis was not added to her active problem list until December 3, 2012, after she applied for benefits. (Tr. 517).

On August 1, 2012, Plaintiff presented to her primary care provider for hypertension, gastrointestinal complaints, hyperlipidemia, and psychiatric complaints. (Tr. 234). Plaintiff denied having any musculoskeletal symptoms. (Tr. 236). On August 31, 2012, Plaintiff presented to her primary care provider with gastrointestinal

complaints. (Tr. 238). Plaintiff denied having any symptoms in her muscles or joints and her back was not tender on examination. (Tr. 240).

On September 5, 2012, Plaintiff filed for benefits under the Act alleging that she was disabled because of back pain. (Tr. 13, 159). In a Function Report submitted later that month, she reported that she had back pain "every day" and was working with her primary care provider to manage her back pain. (Tr. 143). She reported being unable to walk more than sixty yards, problems bending, pulling, twisting, being unable to get up off the floor, unable to perform activities she used to enjoy due to back pain, problems sleeping due to back pain, problems dressing and using the toilet because of back pain, needing to sit down and ice her pack frequently throughout the day, problems cooking due to back pain, problems sitting for more than twenty minutes, problems reaching, and an inability to lift more than five pounds, along with pain and arthritis in her fingers. (Tr. 145-50, 156).

On September 8, 2012, X-rays indicated "mild scoliotic curvature" and "very mild disc narrowing at L4-L5" in her lumbar spine (Tr. 259).

On November 28, 2012, Plaintiff underwent consultative examination with Dr. Thomas McLaughlin, M.D. (Tr. 267). Plaintiff reported a ten-year history of back pain that was a "constant aching" ranging from an 8/10 to 9/10. (Tr. 267). Plaintiff had decreased range of motion in the right knee and spine, with otherwise normal examination:

> STATION AND GAIT: The claimant is able to walk on the heels, walk on the toes, walk heel-to-toe and squat without difficulty. SENSORY: Sensory exam is intact to light touch, pinprick and vibration as well as proprioception. MOTOR: 5/5 strength in the upper and lower extremities bilaterally. CEREBELLAR: There is no ataxia or unsteadiness of gait. Cerebellar function is normal when tested with finger-to-nose, heel-to-shin, rapid alternating movements, and Romberg test with both eyes open and closed. DEEP TENDON REFLEXES: The biceps, triceps, brachioradialis, patellar, and Achilles deep tendon reflexes are graded at +2/4 bilaterally and symmetrically. This is a normal finding. Babinski is downgoing bilaterally. There is no clonus or fasciculations or spasticity. There is no cogwheeling rigidity noted.

(Tr. 272). Dr. McLaughlin opined that Plaintiff could stand for no more than three hours out of an eight-hour workday, was limited in her ability to perform postural activities, and should be limited in her exposure to poor ventilation. (Tr. 275-76). He opined that she could lift up to twenty pounds and was not limited in her ability to reach, handle, finger, or feel. (Tr. 276). Plaintiff reported that chiropractic care had "not been giving her any relief" for the previous two years. (Tr. 268).

Plaintiff treated with her chiropractor every six-weeks for back pain from August 30, 2012 through October 25, 2013. (Tr. 445-47).

In January of 2013, Plaintiff reported elbow pain and back problems to her primary care provider. (Tr. 515-16). In February, April and July of 2013, Plaintiff denied muscle or joint pain. (Tr. 503, 508, 512).

On August 7, 2013, Plaintiff underwent evaluation for a lipoma. (Tr. 434). Plaintiff denied fatigue, weakness, and degenerative joint disease. (Tr. 436-37). She had "age appropriate range of motion and strength, no deformities." (Tr. 438).

On November 11, 2013, she reported muscle and joint pain to her primary care provider. (Tr. 499). Physical examination was normal, with normal gait, station, and reflexes. (Tr. 500).

## B.      Evidence After Alleged Onset

Plaintiff reported knee and back pain to her primary care provider on November 26, 2013, her alleged onset date, but denied it to her cardiac specialist. (Tr. 491-92, 565-69). Her primary care physician ("PCP") did not perform any physical examination, while the cardiac specialist observed normal musculoskeletal findings. *Id.*  Right knee X-rays indicated "minimal degenerative spurring…otherwise, no acute abnormality." (Tr. 557). On five visits through March of 2014, Plaintiff denied having any musculoskeletal symptoms. (Tr. 561, 581, 584, 611-18, 626) (January 9, 2014; January 27, 2014; February 17, 2014; February 25, 2014; March 7, 2014).

Plaintiff complained of back pain to treatment providers from May 2, 2014 through May 15, 2014.  (Tr. 599-602). She exhibited decreased range of motion, and providers prescribed a walker and Meloxicam, a nonsteroidal anti-Inflammatory drug. *Id.*  By May 19, 2014, Plaintiff was denying muscle or joint problems. (Tr. 591, 594). Hypertension, hyperlipidemia, and cardiac conditions were included in her assessment, but no musculoskeletal impairments. (Tr. 591, 594). Musculoskeletal examination was not performed. (Tr. 594). Plaintiff treated with a chiropractor, who noted Plaintiff's reports of less lower back pain in April of 2014 and "0/0" lower back pain on May 30, 2014. (Tr.

652).   There is no evidence of any subsequent medical treatment through the ALJ decision on September 15, 2014. (Doc. 8). Plaintiff did not treat with narcotic pain medication, physical therapy or specialist care for back pain throughout the relevant period. Doc. 8.[2]

## V.    Plaintiff Allegations of Error
### A.    Credibility

Plaintiff asserts the ALJ made various errors from step two through step four, and cites her testimony as evidence supporting these claims. (Pl. Brief). "[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of those statements." SSR 96–7p. The ALJ found that Plaintiff's testimony was less than fully credible. (Tr. 18-22). Plaintiff challenges this finding. (Pl. Brief at 4-5, 10-11). The Court will address this allegation of error first since it affects other claims.

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. Then, the ALJ considers whether "the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are…substantiated

---

[2] Plaintiff filled a prescription for Oxycodone on February 10, 2012, prescribed by Bronwyn Wilke. (473). Plaintiff filled a prescription for a three-day supply of Oxycodone on April 15, 2013, prescribed by Clare Altemus. (Tr. 476). Plaintiff filled a thirty-day supply of Oxycodone on April 22, 2013, prescribed by Paula Larson. (Tr. 476). The Court did not locate any treatment records with these providers' names. Doc. 8. Plaintiff has not identified Oxycodone as a medication for back pain on forms in support of her application, in her testimony, or in her briefs. Doc. 8.

by objective medical evidence." *Id.* If objective evidence indicates underlying impairments, but does not establish the resulting limitations, the ALJ must assess credibility. *Id.* When objective evidence supports both the underlying impairment and the resulting limitations, subjective testimony must be afforded "great weight." *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (internal citations omitted). When objective evidence supports the underlying impairment, but not the resulting limitations, subjective testimony is entitled to "serious consideration." *Id.* To assess credibility, the ALJ must "consider" evidence from the claimant's "prior work record," claimant's statements, medical records, and observations of Social Security employees. 20 C.F.R. § 404.1529(c)(3). The ALJ must "consider" factors including (1) "daily activities;" (2) "the location, duration, frequency, and intensity of your pain or other symptoms;" (3) "precipitating and aggravating factors;" (4) medication; (5) treatment; (6) other measures that relieve symptoms; and (7) "other factors" related to functional limitation. *Id.*

Here, the ALJ found that Plaintiff was not fully credible because she stopped working when the plant closed, not due to her disability, with no subsequent deterioration indicating that she could not return to her past work; physical examinations indicated few objective findings and X-rays indicated only "mild" degenerative changes; Plaintiff denied having any back pain or joint pain whatsoever in the majority of the treatment records; and she underwent conservative treatment with her primary care provider, with no physical therapy, specialist treatment, or  narcotic pain medications. (Tr. 18-22). The

ALJ also found that Plaintiff made inconsistent claims regarding how far she could walk and that her activities of daily living contradicted her claims. (Tr. 19). Plaintiff asserts that the ALJ erred in relying on daily activities to find that she made inconsistent claims regarding how far she could walk. (Pl. Brief at 4-5). "[W]hether the error is harmless depends on whether the other reasons cited by the ALJ…provide substantial evidence for her decision." *Brumbaugh v. Colvin*, 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014).

Plaintiff does not argue or establish that the other rationales provided by the ALJ do not provide substantial evidence for the credibility finding. (Pl. Brief). The ALJ found that "objective X-rays show no more than mild degenerative changes in the back and right knee, and the objective medical observations and examination findings reveal normal movements and walking as well as an ability to squat without difficulty." (Tr. 20). Plaintiff asserts that her "testimony regarding the pain in her lower back and knees is reasonably supported by medical evidence…medical records have proved disc narrowing and scoliosis. (R. 19, R. 38-39, R. 259, 268)." (Pl. Brief at 10-11). Medical records showing disc narrowing and scoliosis provide evidence of the underlying impairments, but are not objective evidence of the alleged limitations specifically arising out of those impairments. (Tr. 259, 268); *Mason*, 994 F.2d at 1067-68. Plaintiff does not address the ALJ's conclusion that the imaging showed only "mild" degenerative changes or that physical examinations documented generally normal findings. (Pl. Brief). This is an

accurate characterization of the record during the relevant period. The only objective findings during the relevant period were decreased range of motion and antalgic gait in May of 2014. (Tr. 599-602). Providers prescribed Meloxicam, and by May 19, 2014, she was denying having any joint or muscle pain, and on May 30, 2014, she reported "0/0" lower back pain to her chiropractor. (Tr. 591, 594, 652). No subsequent examinations exist in the record. Doc. 8. The ALJ reasonably found that the objective medical evidence did not support Plaintiff's allegedly disabling musculoskeletal symptoms, and this is a proper basis for discounting Plaintiff's credibility. *See* SSR 96-7p.

The ALJ properly relied on Plaintiff's conservative treatment. (Tr. 21) ("treatment has been essentially routine and conservative"). After Plaintiff repeatedly reported palpitations, she was referred to a cardiac specialist. (Tr. 565-69). After Plaintiff reported persistent sinusitis, she was referred to an ear, nose, and throat specialist. (Tr. 581). Plaintiff was never referred to a specialist for back or knee pain. Doc. 8. Plaintiff did not treat with narcotic pain medication or physical therapy throughout the relevant period. Doc. 8. Pursuant to SSR 96-7p:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.
> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.

*Id.* (internal footnote omitted). The ALJ reasonably relied on Plaintiff's conservative treatment.

The ALJ relied on a contradiction between the medical records, where Plaintiff generally denied back pain, and her testimony. (Tr. 19) ("The record reflects that the claimant failed to consistently mention lower back pain to the primary care provider on numerous occasions"). This is an accurate characterization of the record. Plaintiff reported knee and back pain to her primary care provider on November 26, 2013, her alleged onset date, but denied it to her cardiac specialist. (Tr. 491-92, 565-69). Her PCP did not perform any physical examination, while the cardiac specialist observed normal musculoskeletal findings. *Id.* Right knee X-rays indicated "minimal degenerative spurring…otherwise, no acute abnormality." (Tr. 557). On five visits through March of 2014, Plaintiff denied having any musculoskeletal symptoms. (Tr. 561, 581, 584, 611-18, 626) (January 9, 2014; January 27, 2014; February 17, 2014; February 25, 2014; March 7, 2014). As noted above, Plaintiff complained of back pain from May 2, 2014, through May 15, 2014, but by May 19, 2014, she was denying having any joint or muscle pain, and on May 30, 2014, she reported "0/0" lower back pain to her chiropractor. (Tr. 591, 594, 652). There is no evidence of any subsequent medical treatment through the ALJ decision on September 15, 2014. (Doc. 8). The ALJ properly relied on the inconsistency between Plaintiff's claims of back pain "every day" with medical records containing frequent denials of back pain. *See* SSR 96-7p ("One strong indication of the credibility of

an individual's statements is their consistency, both internally and with other information in the case record").

The ALJ found that Plaintiff "stopped working due to a business-related layoff following a plant closure rather than because of the allegedly disabling impairments" with "no evidence of a significant deterioration in the claimant's medical condition since that layoff." (Tr. 21). Separation from the workforce for non-disability related reasons is a proper basis for an adverse credibility finding. *See* SSR 96-7p (ALJ should consider work history); *Buckner v. Colvin*, No. 1:15-CV-00175-YK-GBC, 2016 WL 1621993, at *15 (M.D. Pa. Mar. 30, 2016), *report and recommendation adopted*, No. 1:15-CV-175, 2016 WL 1595346 (M.D. Pa. Apr. 21, 2016) (citing *Hogan v. Apfel*, 239 F.3d 958 (8th Cir. 2001) (The closeness in time of plaintiff's on-the-job reprimand to her ceasing work cast doubt on her assertion that she quit her job because of pain and side effects of her pain medication); *Kane v. Colvin*, No. 3:13–CV–02469, 2015 WL 1513960, at *12 (M.D.Pa. Mar. 31, 2015) (noting that the plaintiff reported she was laid off because there was "not enough work for her," not because she was unable to work due to disability)); *Baron v. Colvin*, No. 115CV02305CCCGBC, 2017 WL 835168, at *1 (M.D. Pa. Jan. 27, 2017), *report and recommendation adopted sub nom. Baron v. Berryhill*, No. 1:15-CV-2305, 2017 WL 818885 (M.D. Pa. Mar. 2, 2017).

The ALJ is entitled to deference with regard to credibility determinations. *See Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. 2015) ("the

ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir. 2014)). The ALJ properly found that Plaintiff's testimony was not fully credible because she stopped working when the plant closed, not due to her disability, with no subsequent deterioration indicating that she could not return to her past work, physical examinations indicated few objective findings, X-rays indicated only "mild" degenerative changes, Plaintiff denied having any back pain or joint pain whatsoever in the majority of the treatment records, and she underwent conservative treatment with her primary care provider, with no physical therapy, specialist treatment, pain medications, or other care, although Plaintiff saw specialists and took prescription medication for other impairments. *See* SSR 96-7p; 20 C.F.R. §404.1529. Plaintiff fails to demonstrate that no reasonable person would rely on these factors to find her less than fully credible. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court would not direct a verdict that Plaintiff be found fully credible if the issue were before a jury. *Id.* Even if the ALJ erred in relying on daily activities and an alleged contradiction between Plaintiff's ability to walk certain distances, the error was harmless. *See Brumbaugh v. Colvin*, 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014). The Court does not recommend remand on these grounds.

## B.    Residual Functional Capacity

Plaintiff asserts that the ALJ's RFC lacks substantial evidence with regard to standing and lifting.[3] Neither the ALJ nor Plaintiff questioned the VE regarding whether PRW could be performed with a limitation to lifting more than five pounds. (Tr. 52-54). The Court may not remand for the ALJ to consider any "additional evidence" unless Plaintiff shows good cause for failing to procure the evidence before the ALJ decision. 42 U.S.C. §405(g) ("Sentence Six"). Sentence Six does not limit the phrase "additional evidence," so it should be construed to include any additional evidence, including vocational evidence. *Cf. Herring v. Colvin*, 181 F. Supp. 3d 258, 272 (M.D. Pa. 2014) (Court should not allow "back door" around Sentence Six requirements because claimant fails to frame the issue as one involving Sentence Six). If Plaintiff wanted to allege that she could not perform past relevant work because she was limited to lifting five pounds, she should asked the VE whether past relevant work could be performed with a limitation to lifting no more than five pounds. *See Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (Affirming based in part on counsel's failure to question VE); *cf. Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984) (stating that when claimant is represented by

---

[3] Any error in the RFC with regard to postural functions is harmless because Plaintiff's past work requires no postural movements. *See* 763.684-014 CABINET ASSEMBLER, DICOT 763.684-014 ("Climbing: Not Present - Activity or condition does not exist.  Balancing: Not Present - Activity or condition does not exist. Stooping: Not Present - Activity or condition does not exist. Kneeling: Not Present - Activity or condition does not exist. Crouching: Not Present - Activity or condition does not exist. Crawling: Not Present - Activity or condition does not exist").

counsel, failure to raise objection of ALJ's bias at the hearing operates as a waiver of the issue).

The rationale behind the good cause requirement applies just as well to vocational evidence that could have been elicited at the hearing as it does to medical records that could have been submitted to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). As *Matthews* explains:

> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins*, 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Id.* If the Court remands for an ALJ's alleged failure to develop vocational evidence at step five, without requiring claimants, particularly those represented by counsel, to show good cause for failing to develop the evidence themselves by questioning the vocational expert when they had a chance, they might be "tempted to…refrain from" questioning the vocational expert in the hope at getting a second bite at the apple. *See Id.*

Even if Plaintiff had not waived a challenge to the lifting limitation, the Court would find that substantial evidence supports the ALJ's lifting and standing limitations and would not direct a verdict in Plaintiff's favor if the issue were before a jury. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). With respect to standing, Plaintiff cites her testimony and Dr. McLaughlin's opinion that she should stand no more than three hours. (Pl. Brief). The consultative examiner is not entitled to the deference of the treating source rule. *See Brown v. Colvin*, No. 4:15-CV-00992-MWB-GBC, 2016 WL 6661183, at *16 (M.D. Pa. Aug. 25, 2016), *report and recommendation adopted*, No. 4:15-CV-00992-MWB-GBC, 2016 WL 6652360 (M.D. Pa. Nov. 10, 2016) (since Regulations were enacted in 1991, ALJ may reject non-treating opinions without contrary medical opinion evidence). "The ALJ properly found that the opinion was not supported by objective findings on examination. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003) (*Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

The ALJ properly discounted the evidence that suggested greater standing limitations. The Court would not direct a verdict that Plaintiff was unable to stand six hours a day if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

## C. Failed to consider obesity

Plaintiff asserts that the ALJ "disregarded Plaintiff's obesity" (Pl. Brief at 5) and "failed to take Claimant's obesity into consideration when rendering her Decision. It is evident that Claimant's impairments are further exacerbated by her obesity." (Pl. Brief at 8). The undersigned recently addressed a similar issue in a Report and Recommendation before Judge Brann. *See Brown v. Colvin*, No. 4:15-CV-00992-MWB-GBC, 2016 WL 6661183, at *14 (M.D. Pa. Aug. 25, 2016), *report and recommendation adopted*, No. 4:15-CV-00992-MWB-GBC, 2016 WL 6652360 (M.D. Pa. Nov. 10, 2016). *Brown* cites *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005), which rejected the premise "that the ALJ's failure to mention his obesity is reason enough to remand the case." *Id.* at 552. The Court held that any error in evaluating the claimant's obesity was harmless because:

> [E]ven if we assume—in accordance with common sense—that the administrative record's evidence of Rutherford's 5′2″ height and her weight of some 245 pounds sufficed to alert the ALJ that obesity could be a factor, Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments.[5] Because her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.

*Id.* at 553 (internal footnote omitted).

Another case addressing obesity, *Diaz*, appears to directly conflict with *Rutherford*:

> Citing *Rutherford v. Barnhart*, the government urges that the "ALJ's adoption of their [Drs. Merlin, Potashnik, Tiersten, and Fechner's] conclusions constitutes a satisfactory, if indirect, consideration of that condition [obesity]." Respondent's Br. at 29; *see* 399 F.3d at 552. Significantly, however, in *Rutherford*, the claimant did not assert obesity as an impairment, nor did the ALJ note, or discuss, it. On appeal, Rutherford urged that the ALJ was required to consider her obesity explicitly and, therefore, remand of the case was required. We noted that the references to obesity in the doctors' reports were sufficient to put the ALJ on notice of the impairment, which was factored indirectly, although not explicitly, in the ALJ's determination. We then concluded that Rutherford's claim would fail in any event, because Rutherford never argued that her obesity impacted her job performance.
>
> Here, by contrast, Diaz asserted—and the ALJ specifically determined—that Diaz's obesity constituted a severe impairment. Further, we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. *See Clifford*, 227 F.3d at 873 (noting significant relationship between obesity and severe arthritis of the knees). SSR 02–1p also underscores the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function. Although in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her other impairments at step three.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). The *Diaz* Court's

reasoning that Plaintiff's obesity "would seem to have exacerbated her joint dysfunction

as a matter of common sense" seems like the "generalized response" in *Rutherford* that

"weight makes it more difficult…to stand, walk and manipulate her hands and fingers."

*Diaz*, 577 F.3d at 504; *Rutherford*, 399 F.3d at 552.

The analysis in *Rutherford* is more consistent with general principles of harmless error and the limited grant of subject matter jurisdiction in 42 U.S.C. §405(g), which allows remand only when findings are not supported by substantial evidence. *See Thorne v. Colvin*, No. CIV.A. 13-2139, 2015 WL 3498642, at *5–6 (E.D. Pa. June 3, 2015) (relying on *Rutherford* rather than *Diaz* where "the evidence in the record simply does not support a finding that the claimant's obesity rendered her unable to work"). As noted above, the ALJ properly discounted Plaintiff's claimed back pain or knee pain, regardless of which diagnosis allegedly caused the pain, for a variety of reasons. *Supra*. Substantial evidence supports the ALJ's RFC, and Plaintiff has failed to meet her burden of producing credible evidence that she cannot perform the standing requirements of her past relevant work. Like *Brown*, the undersigned recommends following *Rutherford* and does not recommend remand on these grounds.

### D.  Reliance on VE Testimony

Plaintiff asserts that the ALJ erred in relying on the VE testimony because Plaintiff should have had additional lifting and standing limitations in the RFC. (Pl. Brief at 11). As the Third Circuit explained in *Rutherford*:

> [O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be

relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

*Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). Plaintiff's challenge is a challenge to the RFC itself. (Pl. Brief at 11). Substantial evidence supports the ALJ's RFC. *Supra.* The Court does not recommend remand on these grounds.

### E.  Onset Date

Plaintiff asserts that the ALJ erred because the ALJ used the wrong onset date. (Pl. Brief at 4). The ALJ relied on records from prior to the relevant period wherein Plaintiff denied back pain to find that she was not disabled during the relevant. (Tr. 18-22). However, Plaintiff also denied back pain and knee pain during the relevant period. (Tr. *Supra.* There is no significant difference between examinations prior to and during the relevant period, as findings were generally normal throughout. *Supra.* There is no significant difference in treatment, as Plaintiff continued treating with her primary care provider, without physical therapy, specialist care, or pain medication. *Supra.* In May of 2014, the primary care provider prescribed a walker, but this alone does not render the ALJ's failure to consider the proper relevant period harmful. Any error in using an incorrect onset date is harmless. Substantial evidence supports the ALJ's denial of benefits. The Court does not recommend remand on these grounds.

### F. Listing

Plaintiff asserts that that the ALJ erred in finding that she did not meet Listing 1.04(c). Plaintiff must meet every element of a Listing to be disabled at step three. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Thus, Plaintiff must demonstrate that the ALJ lacked substantial evidence with regard to each element to secure a remand based on a Listing. Plaintiff acknowledges that one element of Listing 1.04(c) is weakness. (Pl. Brief at 8). Plaintiff cites her testimony (Tr. 36), but her testimony does not establish she suffered weakness. (Pl. Brief at 7-8). The only medical records Plaintiff cites show that she was diagnosed with "knee pain" (Tr. 648), obesity and osteoarthritis. (Tr. 498). Plaintiff does not cite to any objective evidence of weakness. Dr. McLaughlin observed "5/5 strength in the upper and lower extremities bilaterally." (Tr. 272). In August of 2013, Plaintiff denied weakness. (Tr. 436-37). There is no mention or observation of weakness during the relevant period. Doc. 8.

Defendant further notes that the Listing requires "a diagnosis through 'appropriately medically acceptable imaging' of 'lumbar spinal stenosis resulting in pseudoclaudication'" and that "based on the only diagnostic imaging in the record, Plaintiff had only 'mild scoliotic curvature' and 'very mild disc narrowing at L4-L5' in her lumbar spine (Tr. 259), not lumbar spinal stenosis resulting in pseudoclaudication (Tr. 18)." (Def. Brief at 3). Plaintiff did not address this matter in a reply brief. Plaintiff

mentions Listing 4.02, which refers to chronic heart failure. (Pl. Brief at 9-10). There is no evidence of heart failure, so the Court assumes this was a typographical error.

Substantial evidence supports the ALJ's finding that Plaintiff did not meet a Listing. The Court would not direct a verdict that Plaintiff met a Listing if the issue were before a jury. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

### G. Arguing During Hearing

Plaintiff writes, "the ALJ appears to be arguing with the Claimant during testimony." (Pl. Brief at 5). Plaintiff does not develop this argument further. *See* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs"); *Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1203–04 (3d Cir. 1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue); *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (declining to "mine the record" in order to support party's case). To the extent Plaintiff is alleging bias, The Court "start[s], however, from the presumption that the hearing officers…are unbiased. This presumption can be rebutted by a showing of… [a] specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195-96, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1 (1982). However, "the burden of establishing a disqualifying interest rests on the party making the assertion." *Id.* Plaintiff does not establish a disqualifying interest. Plaintiff's counsel did not mention arguing during the

hearing. *See Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984) (stating that when claimant is represented by counsel, failure to raise objection of ALJ's bias at the hearing operates as a waiver of the issue). The Court does not recommend remand on these grounds.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. The Court would not recommend directing a verdict if the issue

were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).     Accordingly,

it is HEREBY RECOMMENDED:

I.     This appeal be DENIED, as the ALJ's decision is supported by substantial

evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

Dated: May 3, 2017                    _____s/Gerald B. Cohn_____
                                              GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE